IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MARC ANTHONY LOWELL ENDSLEY,

    Plaintiff,                          No. CIV S-09-2311 WBS GGH P

    vs.

STEPHEN MAYBERG, et al.,

    Defendants.                      ORDER

_____/

        Plaintiff, civilly committed to a state mental hospital, is proceeding in forma pauperis and seeks relief pursuant to 42 U.S.C. § 1983. Pending before the court are plaintiff's "motion for a writ of mandate/prohibition," filed by plaintiff on November 12, 2009 (docket # 9) and plaintiff's "motion for preliminary/preventative injunction," filed on March 25, 2010 (docket # 13); plaintiff's "motion for preliminary/structural injunction (docket # 14); plaintiff's "motion for reparative/preliminary injunction (docket # 15) – all latter three of which were filed on March 25, 2010, and all latter three of which were opposed by defendants in a filing on April 5, 2010 (docket # 16).

        Plaintiff contends his constitutional rights were violated when he, committed to a state mental hospital as a result of having been found guilty by reason of insanity in a criminal matter, was on May 29, 2008, transferred from Patton State Hospital to Atascadero State Hospital, which he maintains is more restrictive, without notice or due process of law. Complaint, pp. 4-5. Plaintiff also claims that he was deprived of his property without due

1

1  process.  Id.  He further contends that the transfer was retaliatory.  Id., at 5.

2  Plaintiff, committed to Patton on May 23, 1997, pursuant to Cal. Penal Code §
3  1026, alleges that he, as a civilly committed person, is entitled to the least restrictive environment
4  under state and federal law.  Complaint, pp. 4, 6.  He claims the difference between Patton and
5  Atascadero is "like night and day," contending that Patton is a co-ed facility with a significantly
6  more humane environment.  Id., at 6.  At Atascadero, an all-male facility, plaintiff no longer has
7  access to unsupervised showers at any time, electrical outlets by the bed, comfortable beds and
8  personal property such as televisions, radios, video game consoles, CD's and DVD's, battery
9  chargers and detachable cords, etc.  Id.  Patton also has secure lockers in patient rooms and
10 patients there can have change for use in vending and copy machines.  Id.  By contrast, plaintiff
11 claims that Atascadero has been identified by a state court as more restrictive than most
12 maximum security prisons and that patients there are treated like prisoners in a prison-like
13 setting.  Id., at 7.

14  Plaintiff claims that he has a "substantive right to the least restrictive conditions"
15 which "survives his refusal to participate in treatment," and contends that state regulations
16 "prohibit" a facility transfer for an inmate's "refusing treatment."  Complaint, p. 7.  Plaintiff
17 avers that under Cal. Penal Code § 1026, he is afforded procedural due process guarantees, that
18 his placement is a court decision and the court must notify plaintiff prior to ordering his transfer
19 and he is entitled to a hearing to contest any proposed transfer.  Id.

20  Plaintiff, rather histrionically, maintains that defendants Mayberg, Luna and
21 Malancharuvil proximately caused his "kidnapping under P.C. § 207 et seq. by causing plaintiff
22 to be arrested and transferred to ASH [Atascadero State Hospital]."  Complaint, p. 8.  He
23 maintains that defendants Mayberg and Luna have been sued for prior illegal transfers, asserting
24 that in one such instance, the case was apparently settled and not published.  Id.  Plaintiff alleges
25 that defendant Mayberg has failed to promulgate constitutionally adequate transfer procedures
26 and to reverse plaintiff's putatively unconstitutional transfer.  Id.  Plaintiff alleges that

"defendants Mayberg, Radavsky, Malancharuvil, Luna and DeMorales contributed to and proximately caused the tort of dependent adult abuse under P.C. § 368 et seq."[1] Id.

Plaintiff further alleges that he has been subjected to substantive and procedural due process by the confiscation of his property as contraband. Complaint, p. 9. He claims that Atascadero's definition of contraband is unconstitutional because the patient property restrictions were not appropriately promulgated, are punitive rather than comporting with appropriate standards for the mentally ill and are unfairly disparate from other mental health facilities. Id. Plaintiff claims that he demanded his property in a letter on June 9, 2008, to defendants Mayberg and DeMorales, and defendant Radavsky responded on Mayberg's behalf that plaintiff's property could be held indefinitely at the discretion of the Department of Mental Health. Id., at 9-10. Plaintiff alleges this action is unconstitutional, depriving him of procedural due process. Id., at 10-11.[2]

Plaintiff also claims that his transfer was retaliatory because he has two § 1983 complaints pending against defendant Luna, along with two state civil complaints filed against defendants Luna and Malancharuvil and that he has "filed countless Patton grievances." Complaint, p. 12. Plaintiff also alleges that a separate basis for his transfer was that he was refusing treatment. Id. Plaintiff alleges that the transfer on these bases violates his constitutional right to court access as well as state law and imputes these violations to defendants Mayberg, Luna and Malancharuvil. Id., at 12-13.

\\\\\

---

[1] As the court noted previously (see Order, filed on October 26, 2009, p.2, note 1), although plaintiff expressly stated that he is suing the defendants each in his/her individual capacity, he has added that he seeks to name the Director of the California Department of Mental Health in an official capacity. As plaintiff has identified defendant Mayberg as the Director of the Cal. Dept. of Mental Health, therefore, the court found that this defendant is sued both in his individual and official capacities.

[2] The court notes the irony of plaintiff's adamant protest at having been transferred from a facility where he apparently was manifestly dissatisfied.

As relief, plaintiff seeks money damages and declaratory relief, as well as injunctive relief in the form of a transfer to a less restrictive setting, at a minimum to Patton, pursuant to state law, Cal. Welf. & Inst. Code § 5358, asking this court to assert supplemental jurisdiction over his state law claims, pursuant to 28 U.S.C. § 1367. Complaint, pp. 14-17.

"Motion for Writ of Mandate/Prohibition" & Motions for Preliminary Injunction

In his motion for a writ of mandate/prohibition (docket # 9) plaintiff claims he is being deprived of an adequate volume of legal papers and that defendants (whom he misidentifies as respondents) do not permit him to have more than six inches of paper, which he believes is unreasonably restrictive particularly in light of the fact that he is proceeding pro per (or pro se) in three current legal actions. Docket # 9, pp. 1-2. He claims that the restriction imposed on him exceeds that imposed on inmates in correctional settings and constitutes "an underground regulation," i.e., one not properly promulgated through the Administrative Law Office. Id., at 2, 4. He does not identify any particular defendant as responsible for the restrictions that he challenges. Plaintiff asks that a writ issue directing defendants and their subordinates not to seize his legal papers and not to remove staples from his legal mail while at the same time providing stapling of his papers as needed. Id., at 2.

In his motion for preliminary/preventative injunction (docket # 13), plaintiff asks again that he not be "unreasonably" restricted to six inches of paper within his living quarters and asks further that he be allowed six cubic feet of personal property in his living space consistent with the rules for prisoners. Docket # 13, p. 1. He also again asks the defendants be directed not to remove staples but to provide them for his legal papers. Id. He further asks to have "reasonable office supplies including but not limited to: pencil, eraser, highlighter, white-out tape, post-it notes, at least 12 hours a day of law library access." Id. He requests that he be charged no more than five cents per photocopy and that defendants "comply the indigency standards," by which he means access provided to free supplies and services. Id. He further asks

\\\\\

4

1 generally that he not be subjected "to any form of punishment" in the form of reducing his HAS[3]
2 level (a term he does not explain), or in any limitation in "his movement, activity or privileges,"
3 on the ground that in his capacity he cannot be punished. Id. Again plaintiff identifies no
4 individual defendant as responsible for any condition of which he complains, nor does he identify
5 what limitations he is protesting (other than the ones previously enumerated regarding the
6 amount of legal paper, detailed supplies and the extraordinary amount of law library access he
7 seeks).

8    In his putative "motion for preliminary/structural injunction" (docket # 14),
9 plaintiff asks that the court prohibit defendants (again unspecified) from authorizing any more
10 patient commitments to Atascadero "until conditions of confinement are brought to constitutional
11 levels" for plaintiff and other patients who are civilly committed. Docket # 14, p. 1. He goes so
12 far as to ask the court to prohibit all staff and non-patients from access to services of the
13 Atascadero canteen, commissary or grill until such services are equally provided to patients. Id.

14   In his last motion, the one for "reparative/preliminary injunction" (docket # 15),
15 plaintiff seeks the immediate return of all of his property, placement in a cell with a double
16 electrical outlet and "secure storage for all of his property in his living quarters." Docket # 15, p.
17 1. He demands that computers be made available so that he can use a flash drive for preparation
18 and printing of his legal work. Id. Plaintiff asks to be immediately transferred to Patton, while at
19 the same time asking that he be placed on a long-term rather than an admissions unit, specifically
20 a unit 74 (it is unclear whether this unit is at Atascadero or Patton). Id. He wants "a standard
21 bed with a full-size locker, individual bed light, and electrical outlets." Id. In addition to the
22 numerous amenities he apparently seeks at Atascadero, he also asks that his property be
23 transported with him back to Patton to be returned to him immediately upon his reaching Patton.
24 Id. He claims to be suffering mentally and emotionally and to be subject to irreparable harm as a

---

[3] This apparently stands for Hospital Access Level, as indicated in plaintiff's declaration at docket # 15, p. 5.

5

1  civil patient.  Id.

## Legal Standard for Preliminary Injunction

"The proper legal standard for preliminary injunctive relief requires a party to demonstrate 'that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'"  Stormans, Inc. v. Selecky, 586 F.3d 1109, 1127 (9th Cir. 2009), quoting Winter v. Natural Res. Def. Council, Inc., ___ U.S. ___, 129 S.Ct. 365, 374 (2008).

In cases brought by prisoners involving conditions of confinement, any preliminary injunction "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct the harm." 18 U.S.C. § 3626(a)(2).

In their opposition, defendants correctly note that many of plaintiff's requests are not encompassed within his § 1983 complaint and that he apparently seeks a "wholesale reformation of the policies and practices at Atascadero State Hospital" without having "made any showing of irreparable injury or the inadequacy of the legal remedies available in his underlying lawsuit." Opposition, p. 2.

The gravamen of this action is that plaintiff, a civilly committed inmate, was transferred from one state hospital to another with more restrictive conditions without due process and as a form of retaliation.  Plaintiff does not thereby have carte blanche to seek to engage this court in determining the amount of his office supplies or legal papers, etc., or any of the other myriad complaints he has about daily living at Atascadero, many of which on the surface appear far from reasonable, such as the excessive amount of law library access to which he feels he is entitled.  As the Supreme Court has long noted, a preliminary injunction must relate to the allegations in the complaint. De Beers Consol. Mines v. U.S., 325 U.S. 212, 220, 65 S. Ct. 1130, 1134 (1945) (preliminary injunction not appropriate for matters "lying outside the issues in

the suit"). That is, it is appropriate for a preliminary injunction "to grant intermediate relief of the same character as that which may be granted finally." Id. If there is no relation, it is not an injunctive relief situation. A party seeking preliminary injunctive relief "must necessarily establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint." Devose v. Herrington, 42 F.3d 470, 471 (8th Cir. 1994). In other words, plaintiff must seek injunctive relief related to the merits of his underlying claim. If he believes the conditions of quotidian life at Atascadero rise to the level of constitutional violations, plaintiff is free to pursue relief from the conditions of confinement there in a separate action filed in the appropriate jurisdiction within which Atascadero is encompassed.

On the other hand, to the extent he seeks an immediate transfer back to Patton, plaintiff arguably seeks relief related to the allegations of the underlying complaint but he has made no adequate showing that he is entitled to the relief which he seeks as a form of permanent injunctive relief in his complaint, in the form of a preliminary injunction at this stage. The court notes that defendants filed a motion to dismiss on March 11, 2010 (docket # 12), which plaintiff has failed to oppose and his time for doing so has expired. Plaintiff was cautioned at ¶ 7 of the court's service order, filed on November 19, 2009 (docket # 10) that any failure to oppose, inter alia, a motion to dismiss timely "may be deemed a waiver of opposition to the motion." The court will grant plaintiff an extension of time of fourteen days to show cause for his failure to oppose the motion and to file any opposition thereto. Any Findings and Recommendations on the "preliminary injunction" will await the adjudication of the motion to dismiss.

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff motions for a writ of mandate, filed on November 12, 2009 (docket # 9), and his motions for ill-founded varieties of preliminary injunctions, filed on March 25, 2010 (docket # 13, docket # 14, docket # 15), are hereby vacated as either inapposite or insufficiently supported;

\\\\\

1  2. Plaintiff is granted fourteen days (with no further extension) to show cause for his failure to timely oppose defendants' March 11, 2010, motion to dismiss (docket # 12), and to file any opposition thereto; any failure to do so will result in this court finding that plaintiff has waived his opposition.

3. Any adjudication of the one preliminary injunction motion properly encompassed within this action shall await adjudication of the motion to dismiss.

DATED: April 14, 2010

/s/ Gregory G. Hollows
_____
GREGORY G. HOLLOWS
UNITED STATES MAGISTRATE JUDGE

GGH:009
ends2311.mtns