1

2

3

4

5

6

7

8                         IN THE UNITED STATES DISTRICT COURT

9                       FOR THE EASTERN DISTRICT OF CALIFORNIA

10   MARC ANTHONY LOWELL ENDSLEY,

11              Plaintiff,                    No. CIV S-09-2311 WBS GGH P

12        vs.

13   STEPHEN MAYBERG, et al.,

14              Defendants.                   ORDER &

15                                            FINDINGS AND RECOMMENDATIONS

16   _____/

17   Introduction

18              Plaintiff pro se, civilly committed to a state mental hospital, seeks relief pursuant

19   to 42 U.S.C. § 1983, and is proceeding in forma pauperis.  Pending before the court are: 1) a

20   motion to dismiss claim one of plaintiff's complaint, brought on behalf of defendants Mayberg,

21   Malancharuvil, Luna, DeMorales and Radavsky, filed on March 11, 2010, to which plaintiff filed

22   an opposition on March 28, 2010 (following the court's show cause order for his failure to file a

23   timely opposition, filed on April 14, 2010), after which defendants filed their reply on May 4,

24   2010; 2) plaintiff's motion for leave to amend his complaint, filed on April 28, 2010, to which the

25   court, on July 16, 2010, directed defendants to file any opposition, which they did on August 4,

26   2010; 3) plaintiff's motion for partial summary judgment, filed on September 16, 2010, after

1

1   which, on September 23, 2010, defendants requested a denial or continuance of the motion.

2        As to plaintiff's motion for partial summary judgment, the court agrees with

3   defendants that the question of the constitutionality of plaintiff's first claim for relief was yet to be

4   decided at the time plaintiff brought this motion which rests on the same first claim.  See motion

5   for partial summary judgment and defendants' opposition thereto.  In addition, at the time of the

6   partial summary judgment motion, no ruling had yet been made as to plaintiff's motion for leave

7   to amend to add new claims and parties.  No answer has been filed and no discovery and

8   scheduling order has yet issued.  The motion will be vacated without prejudice as premature.

9   Complaint

10       Plaintiff contends his constitutional rights were violated when he, committed to a

11  state mental hospital as a result of having been found not guilty by reason of insanity in a criminal

12  matter,[1] was on May 29, 2008, transferred from Patton State Hospital to Atascadero State

13  Hospital, which he maintains is more restrictive, without notice or due process of law.

14  Complaint, pp. 4-5.  Plaintiff also claims that he was deprived of his property without due

15  process.  Id.  He further contends that the transfer was retaliatory.  Id., at 5.

16       Plaintiff, committed to Patton on May 23, 1997, pursuant to Cal. Penal Code §

17  1026, claims that he, as a civilly committed person, is entitled to the least restrictive environment

18  under state and federal law.  Complaint, pp. 4, 6.  He claims the difference between Patton and

19  Atascadero is "like night and day," contending that Patton is a co-ed facility with a significantly

20  more humane environment.  Id., at 6.  At Atascadero, an all-male facility, plaintiff no longer has

21  access to unsupervised showers at any time, electrical outlets by the bed, comfortable beds and

22  personal property such as televisions, radios, video game consoles, CD's and DVD's, battery

23

24     [1] The court takes judicial notice of another case brought by plaintiff, Endsley v. Luna,
    2009 WL 3806266 (C.D. Cal. 2009).  (Judicial notice may be taken of court records.  Valerio v.
    Boise Cascade Corp., 80 F.R.D. 626, 635 n.1 (N.D. Cal. 1978), aff'd, 645 F.2d 699 (9th Cir.),
25  cert. denied, 454 U.S. 1126 (1981)).  In Endsley v. Luna, 2009 WL 3806266 *3, it is stated that
    plaintiff was committed in 1997 to Patton under Cal. Penal Code § 1026  "due to his acquittal by
26  reason of insanity from a first degree murder charge in the shooting death of his father."

1  chargers and detachable cords, etc.  Id.  Patton also has secure lockers in patient rooms and

2  patients there can have change for use in vending and copy machines.  Id.  By contrast, plaintiff

3  claims that Atascadero has been identified by a state court as more restrictive than most maximum

4  security prisons and that patients there are treated like prisoners in a prison-like setting.  Id., at 7.

5          Plaintiff claims that he has a "substantive right to the least restrictive conditions"

6  which "survives his refusal to participate in treatment," and contends that state regulations

7  "prohibit" a facility transfer for an inmate's "refusing treatment."  Complaint, p. 7.  Plaintiff avers

8  that under Cal. Penal Code § 1026, he is afforded procedural due process guarantees, that his

9  placement is a court decision and the court must notify plaintiff prior to ordering his transfer and

10 he is entitled to a hearing to contest any proposed transfer.  Id.

11         Plaintiff, rather histrionically, maintains that defendants Mayberg, Luna and

12 Malancharuvil proximately caused his "kidnapping under P.C. § 207 et seq. by causing plaintiff to

13 be arrested and transferred to ASH [Atascadero]."  Complaint, p. 8.  He maintains that defendants

14 Mayberg and Luna have been sued for prior illegal transfers, asserting that in one such instance,

15 the case was apparently settled and not published.  Id.  Plaintiff alleges that defendant Mayberg

16 has failed to promulgate constitutionally adequate transfer procedures and to reverse plaintiff's

17 putatively unconstitutional transfer.  Id.  Plaintiff alleges that defendants "Mayberg, Radavsky,

18 Malacharuvil, Luna and DeMorales contributed to and proximately caused the tort of dependent

19 adult abuse under P.C. § 368 et seq."  Id.

20         Plaintiff further alleges that he has been subjected to substantive and procedural

21 due process by the confiscation of his property as contraband.  Complaint, p. 9.  He claims that

22 Atascadero's definition of contraband is unconstitutional because the patient property restrictions

23 were not appropriately promulgated, are punitive rather than comporting with appropriate

24 standards for the mentally ill and are unfairly disparate from other mental health facilities.  Id.

25 Plaintiff claims that he demanded his property in a letter on June 9, 2008, to defendants Mayberg

26 and DeMorales, and defendant Radavsky responded on Mayberg's behalf that plaintiff's property

3

1  could be held indefinitely at the discretion of the Department of Mental Health.  Id., at 9-10.

2  Plaintiff alleges this action is unconstitutional, depriving him of procedural due process.  Id., at

3  10-11.

4       Plaintiff also claims that his transfer was retaliatory because he has two § 1983

5  complaints pending against defendant Luna, along with two state civil complaints filed against

6  defendants Luna and Malancharuvil and that he has "filed countless Patton grievances."

7  Complaint, p. 12.   (The court notes the irony of plaintiff's adamant protest at having been

8  transferred from a facility where he apparently was manifestly dissatisfied).  Plaintiff also alleges

9  that a separate basis for his transfer was that he was refusing treatment.  Id.  Plaintiff alleges that

10  the transfer on these bases violates his constitutional right to court access as well as

11  state law and imputes these violations to defendants Mayberg, Luna and Malancharuvil.  Id., at

12  12-13.

13       As relief, plaintiff seeks money damages and declaratory relief, as well as

14  injunctive relief in the form of a transfer to a less restrictive setting, at a minimum to Patton,

15  pursuant to state law, Cal. Welf. & Inst. Code § 5358,[2] asking this court to assert supplemental

16  jurisdiction over his state law claims, pursuant to 28 U.S.C. § 1367.  Complaint, pp. 14-17.

17  Motion to Dismiss

18            *Legal Standard for Motion to Dismiss*

19       In order to survive dismissal for failure to state a claim pursuant to Rule 12(b)(6), a

20  complaint must contain more than a "formulaic recitation of the elements of a cause of action;" it

21  must contain factual allegations sufficient to "raise a right to relief above the speculative level."

22  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 1965 (2007).  "The pleading must

23  contain something more...than...a statement of facts that merely creates a suspicion [of] a legally

24  _____

25       [2] The court notes that Cal. Welf. & Inst. Code § 5358 is directed toward placement and
    treatment of conservatees, i.e, those who are gravely disabled and under conservatorships, not
    individuals like plaintiff who have been "acquitted" of a criminal act or acts by reason of

26  insanity.

4

1  cognizable right of action." Id., quoting 5 C. Wright & A. Miller, Federal Practice and Procedure

2  § 1216, pp. 235-236 (3d ed. 2004).  "[A] complaint must contain sufficient factual matter,

3  accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, ___

4  U.S. ___, 129 S.Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570, 127 S.Ct. 1955).  "A

5  claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

6  the reasonable inference that the defendant is liable for the misconduct alleged." Id.

7      In considering a motion to dismiss, the court must accept as true the allegations of

8  the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740, 96 S.

9  Ct. 1848, 1850 (1976), construe the pleading in the light most favorable to the party opposing the

10  motion and resolve all doubts in the pleader's favor.  Jenkins v. McKeithen, 395 U.S. 411, 421, 89

11  S. Ct. 1843, 1849, reh'g denied, 396 U.S. 869, 90 S. Ct. 35 (1969).  The court will "'presume that

12  general allegations embrace those specific facts that are necessary to support the claim.'" National

13  Organization for Women, Inc. v. Scheidler, 510 U.S. 249, 256, 114 S.Ct. 798, 803 (1994), quoting

14  Lujan v. Defenders of Wildlife, 504 U.S. 555, 561, 112 S. Ct. 2130, 2137 (1992).  Moreover, pro

15  se pleadings are held to a less stringent standard than those drafted by lawyers.  Haines v. Kerner,

16  404 U.S. 519, 520, 92 S. Ct. 594, 596 (1972).

17      The court may consider facts established by exhibits attached to the complaint.

18  Durning v. First Boston Corp., 815 F.2d 1265, 1267 (9th Cir. 1987).  The court may also consider

19  facts which may be judicially noticed, Mullis v. United States Bankruptcy Ct., 828 F.2d 1385,

20  1388 (9th Cir. 1987); and matters of public record, including pleadings, orders, and other papers

21  filed with the court, Mack v. South Bay Beer Distributors, 798 F.2d 1279, 1282 (9th Cir. 1986).

22  The court need not accept legal conclusions "cast in the form of factual allegations."  Western

23  Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981).

24      A pro se litigant is entitled to notice of the deficiencies in the complaint and an

25  opportunity to amend, unless the complaint's deficiencies could not be cured by amendment.  See

26  Noll v. Carlson, 809 F. 2d 1446, 1448 (9th Cir. 1987).

1       *Motion*

2          Defendants move for dismissal of plaintiff's first claim, pursuant to Fed. R. Civ. P.

3   12(b)(6), that his transfer violated his substantive and procedural due process rights on the ground

4   that plaintiff "failed to state a claim upon which relief can be granted...."[3]  Notice of Motion to

5   Dismiss (MTD), pp. 1-2.  Defendants contend that plaintiff has failed to state facts sufficient to

6   constitute a claim for relief based on his transfer from Patton State Hospital to Atascadero.  Points

7   and Authorities in Support of MTD (hereafter, simply MTD), p. 1.  As to defendant DeMorales,

8   he argues additionally that plaintiff's claim cannot implicate him for the simple reason that he is

9   alleged to work at Atascadero, the receiving hospital, and cannot have been responsible for what

10  occurred at Patton prior to plaintiff's transfer.  Id. at 2.  As to each of them, defendants contend

11  that plaintiff has no constitutional right to the mental institution of his choice and further assert

12  that neither the federal constitution nor any law provides him with a procedural or substantive due

13  process right concerning the mental institution where he will be housed.  Id. at 3, citing Cal. Penal

14  Code § 1026(b); Jones v. United States, 463 U.S. 354, 366, 103 S. Ct. 3043 (1983) ("a finding of

15  not guilty by reason of insanity is a sufficient foundation for commitment of an insanity acquittee

16  for the purposes of treatment and the protection of society"); Bell v. Wolfish, 441 U.S. 520, [534-

17  ]535, 99 S. Ct. 1861 (1979) ("In evaluating the constitutionality of conditions or restrictions of

18  pretrial detention that implicate only the protection against deprivation of liberty without due

19  process of law, we think that the proper inquiry is whether those conditions amount to punishment

20  of the detainee"); Hydrick v. Hunter, 500 F.3d 978, 997 (9th Cir. 2007) (finding that Fourteenth

21  Amendment requires that those civilly committed to state hospital (Atascadero, in this instance)

22  pursuant to the Sexually Violent Predators Act not be subjected to conditions that amount to

23

24          [3] The notice actually states that as to claim one, the procedural and substantive due
    process claim regarding his transfer, "plaintiff has failed to state a claim upon which relief can be
25  granted for negligence."   The reference to "negligence" appears to be erroneous and inadvertent
    as it is not raised in the supporting memorandum and does not, in any event, appear to be
26  apposite.

1   punishment).[4]  Defendants also cite Cal. Welf. & Inst. Code §§ 7228[5] and 7230, which provide

2   that patients committed under Cal. Penal Code § 1026, who have been found to be a high security

3   risk are to be treated at either Atascadero or Patton.  Id. at 4.  Defendants argue that the

4   substantive due process right that plaintiff retains as an involuntarily committed individual found

5   not guilty by reason of insanity does not include a right to be placed at the mental institution of his

6   choice, citing Mullen v. Surtshin, 590 F. Supp.2d[6] 1233, 1241 (N.D. 2008) ("Under the Due

7   Process Clause of the Fourteenth Amendment, persons who have been involuntarily committed

8   retain substantive liberty interests which include the right to adequate food, shelter, clothing and

9   medical care; safe conditions of confinement; and freedom from unnecessary bodily restraint.")

10  Id. at 3-4.

11          *Opposition*

12          As to defendant DeMorales, plaintiff maintains that he is entitled to discovery

13  before a decision can be reached as to whether or not that defendant has any responsibility for

14  plaintiff's transfer; plaintiff further states that he finds it difficult to believe that this defendant

15  would have no notice of patients being administratively transferred to the hospital at which he

16  works.  Opposition (Opp.), p. 4.  Plaintiff avers that he was committed to Patton by judicial order

17  in May of 1997 and transferred to Atascadero in May of 2008, a place he claims to be

18  "substantially more restrictive."  Opp. at 2.  Plaintiff contends that his confinement is within the

19  court's jurisdiction, citing, inter alia, Cal. Penal Code § 1026(g), and that he cannot be transferred

20  to a more restrictive setting without a hearing and court order, citing, e.g., Benham v. Edwards,

21  _____

22          [4]  Although defendants do not note it, judgment in this case was vacated by Hunter v.
    Hydrick, 129 S. Ct. 2431 (Mem) (May 26, 2009), and the case remanded by the Supreme Court

23  to the Ninth Circuit, "for further consideration in light of Ashcroft v. Iqbal, 556 U.S.__, 129 S.
    Ct. 1937 [] 2009."  However, for the point of law for which the case is cited, it does not appear

24  that the Ninth Circuit case was overturned.

25          [5]  Defendants cited Cal. Welf. & Inst. Code § 7238, but there does not appear to be such a
    statute.

26          [6]  Defendants mis-cited this case as 590 F. Supp. 1233.

501 F.Supp. 1050 (D.C. Ga. 1980)[7]; Eubanks v. Clarke, 434 F. Supp. 1022, 1029 (D.C. Pa. 1977);

Lynch v. Baxley, 744 F.2d 1452, 1459 (11th Cir. 1984); Application of Cochrane, 434 F. Supp.

1207, 1215 (D. Neb. 1977); Williams v. Robinson, 432 F.2d 637, 644 (U.S. App. D.C. 1970);

Howard v. Overholser, 130 F.2d 429 (U.S. App. DS 1942); Kesselbrenner v. Anonymous, 33

N.Y.2d 161, 350 NYS 2d 889, 891 (N.Y. 1973); Burchett v. Bower, 355 F. Supp. 1278, 1281 (D.

Ariz. 1973); Jones v. Robinson, 440 F.2d 249, 251 (U.S.App. D.C. 1971); In re Anderson, 140

Cal. Rptr. 546, 553 (Cal.App.2d 1977).  Opp. at 2.  Plaintiff burdens the court with revisiting his

memorandum in support of motions for various preliminary injunctions brought previously and

vacated by the court as either inapposite or insufficiently supported,[8] referring the court to a

supporting memorandum he states that he filed on March 17, 2010.  Opp. at 2.  There is no

memorandum filed on that date, but there is one that plaintiff dated March 21, 2010, and signed,

that is docketed at #15 as filed on March 25, 2010, which the court has reviewed.  Among the

authority that plaintiff cites within the earlier document he filed in support of his position that he

is entitled to due process before a transfer to a more restrictive setting (that is not referenced

within the opposition) are: People v. Michael W., 32 Cal. App.4th 1111, 38 Cal. Rptr.2d 556, 561

(1995); Baxstrom v. Herold, 383 U.S. 107, 86 S. Ct. 760, 764 (1966); Meachum v. Fano, 427 U.S.

215, 96 S. Ct. 2532 (1976); Eckerhart v. Hensley, 475 F. Supp. 908 (W.D. Mis. 1979).  Docket #

15, pp. 9-10.

        Plaintiff takes issue with defendants' reliance on Bell v. Wolfish, asserting that

---

[7] This decision was vacated in part by Benham v. Edwards, 678 2d 511 (5th Cir. 1983), which was, in turn, vacated and remanded by the United States Supreme Court to the Fifth Circuit Court of Appeals "for further consideration in light of Jones v. United States, 463 U.S. 354, 103 S. Ct. 3043 [ ](1983)."  See Ledbetter v. Benham, 463 U.S. 1222, 103 S. Ct. 3565 (Mem) (1983).  On subsequent remand from the Fifth Circuit (Benham v. Edwards, 719 F.2d 772 (5th Cir. 1983)) back to the district court the decision upon which plaintiff relies was reversed and it was found that the constitution did not provide any right to "insanity acquittees to be free of the burden of proof in release proceedings" and that an insanity acquittal reasonably "supports an inference of continuing mental illness."  Benham v. Ledbetter, 609 F. Supp. 125, 127 (D.C. Ga. 1985).

[8] See Order, filed on April 14, 2010 (docket # 19).

1   <u>Bell</u> was not the dispositive standard for civil commitment.  Opp., p. 3.  And that neither <u>Hydrick</u>

2   <u>v. Hunter</u>, <u>supra</u>, 500 F.3d at 997 (9th Cir. 2007), nor <u>Jones v. Blanas</u>, 393 F.3d 918 (9th Cir. 2004),

3   supports that "application."  Id. at 4.  He asserts that while he may not have a right to be placed at

4   the institution of his choice, but he does have a right to be placed at an institution of the court's

5   choice and that that choice be the least restrictive.  Id.  Without specifying any particular case,

6   plaintiff contends that defendants have been sued concerning unconstitutional transfers and

7   realizing their legal position was tenuous have settled out of court.  Id.  He contends that he has

8   been retaliated against for refusing to participate in "fraudulent 'treatment'" and for filing lawsuits

9   against the defendants.  Id.

10              *Reply*

11              Defendants maintain that the cases cited by plaintiff do not support his opposition,

12   many of them dealing with the question of re-committing an individual who had been civilly

13   committed but released, citing, e.g., <u>In re Anderson</u>, 73 Cal. App.3d 38, 40-41, 140 Cal. Rptr. 546

14   (1977).  Reply, p. 1.  Defendants also make the cogent point (see below) that <u>Bell v. Wolfish</u>,

15   <u>supra</u>, which plaintiff eschews, concerned the rights of pretrial detainees, who at that point are

16   legally innocent of any crime, and that no authority indicates civilly committed individuals who

17   have been adjudged insane at the time they committed a crime should stand in a better position

18   regarding their treatment than those who have yet to be found guilty of anything.  Id. at 1-2.

19              Defendants also argue that the Department of Mental Health may transfer an

20   inmate of a state institution within its jurisdiction to any other such institution and are not required

21   to hold a hearing, citing Cal. Penal Code § 1026; Cal. Welf. & Inst. Code § 7302<sup>9</sup>;  <u>Meachum v.</u>

22   \\\\\

23

_____

24              <sup>9</sup> Under this code section, those patients admitted to a state hospital before July 1, 1969
     "and all patients judicially committed or remanded, may be transferred to a like institution at the
25   request of relatives or friends" if there is room for the patient and if the department(s) having
     jurisdiction and the medical directors of the respective institutions consent to a transfer with the
26   expense to be paid by the relatives or friends who seek the transfer.

1  Fano, 427 U.S, 215, 224-225, 96 S. Ct. 2532 (1976)[10]; In re Cathey, 55 Cal.2d 679, 688 (1961).[11]

2  Reply p. 2.  Defendants further contend that plaintiff has not provided factual support that he has

3  been transferred to a more restrictive environment and that his many filings demonstrates that he

4  appears to think that any restriction on his freedom is a form of punishment and constitutionally

5  invalid.  Id.  Defendants aver that plaintiff is housed in a facility for treatment of his mental illness

6  and that, for those found to suffer from insanity, "'least restrictive'" does not signify "'non-

7  restrictive.'" Id.  They maintain that the Dept. of Mental Health has determined that plaintiff's

8  needs and those of public are served best by this treatment at Atascadero and such placement does

9  not violate his constitutional rights.  Id.

10  \\\\\

---

12  [10]  Defendants' reliance upon Meachum, supra, does not appear to be completely apposite
inasmuch as it finds that a convicted prisoner does not have a due process right to hearing prior
13  to a prison transfer.  Meachum v. Fano, at 224, 96 S. Ct. at 2538 [emphasis in original]:

> [W]e cannot agree that any change in the conditions of
> confinement having a substantial adverse impact on the prisoner
> involved is sufficient to invoke the protections of the Due Process
> Clause.  The Due Process Clause by its own force forbids the State
> from convicting any person of crime and depriving him of his
> liberty without complying fully with the requirements of the
> Clause.  But given a valid conviction, the criminal defendant has
> been constitutionally deprived of his liberty to the extent that the
> State may confine him and subject him to the rules of its prison
> system so long as the conditions of confinement do not otherwise
> violate the Constitution.  The Constitution does not require that the
> State have more than one prison for convicted felons; nor does it
> guarantee that the convicted prisoner will be placed in any
> particular prison, if, as is likely, the State has more than one
> correctional institution.  The initial decision to assign the convict
> to a particular institution is not subject to audit under the Due
> Process Clause, although the degree of confinement in one prison
> may be quite different from that in another.  The conviction has
> sufficiently extinguished the defendant's liberty interest to
> empower the State to confine him in *any* of its prisons

Whether an insanity "acquittee" is a "convicted prisoner" is a point not necessary to reach.

[11]  Although not noted by defendants, this case was disapproved on another ground in In re
Barnett, 31 Cal.4th 466, 478 n. 8, 3 Cal. Rptr.3rd 108, 118 n. 8 (Cal. 2003).

*Analysis*

Under Youngberg v. Romeo, 457 U.S. 307, 324, 102 S. Ct. 2452, 2462 (1982), a mentally retarded individual involuntarily committed to a state institution was determined to have constitutionally protected liberty interests under the due process clause of the Fourteenth Amendment to reasonably safe conditions of confinement as well as freedom from unreasonable bodily restraints, as well as "such training as may be required by these interests."  In Jones v. United States, 463 U.S. 354, 364, 368-370,103 S. Ct. 3043, 3049, 3051-3053 (1983), where Congress had determined that a verdict of not guilty by reason of insanity constituted an adequate basis for hospitalization of a dangerous and mentally ill acquittee, it was not found to be unconstitutional that such a commitment should be indefinite, pending proof of recovery, notwithstanding whether or not it extends beyond the time the acquittee would have been incarcerated if criminally convicted.  The High Court found that a preponderance of the evidence standard comported with due process for commitment of insanity acquittees.  Jones, at 368, 370, 103 S. Ct. at 3051, 3052-53.  In California, one found not guilty by reason of insanity cannot be kept in custody longer that the maximum state prison term to which he/she could have been sentenced for the underlying offense, but the district attorney may petition for an extension of the commitment period under Cal. Penal Code § 1026.5, in an essentially civil commitment proceeding.  People v. Dobson, 161 Cal.App.4th 1422, 1434, 75 Cal. Rptr.3d (Cal. App. 2008). Cal. Penal Code § 1026(b) states in full:

> Prior to making the order directing that the defendant be confined in a state hospital or other treatment facility or placed on outpatient status, the court shall order the community program director or a designee to evaluate the defendant and to submit to the court within 15 judicial days of the order a written recommendation as to whether the defendant should be placed on outpatient status or confined in a state hospital or other treatment facility.  No person shall be admitted to a state hospital or other treatment facility or placed on outpatient status under this section without having been evaluated by the community program director or a designee.  If, however, it appears to the court that the sanity of the defendant has been recovered fully, the defendant shall be remanded to the custody of the sheriff until the issue of sanity shall have been finally

1    determined in the manner prescribed by law. A defendant
     committed to a state hospital or other treatment facility or placed on
2    outpatient status pursuant to Title 15 (commencing with Section
     1600) of Part 2 shall not be released from confinement, parole, or
3    outpatient status unless and until the court which committed the
     person shall, after notice and hearing, find and determine that the
4    person's sanity has been restored. *Nothing in this section shall
     prevent the transfer of the patient from one state hospital to any
5    other state hospital by proper authority.*  Nothing in this section
     shall prevent the transfer of the patient to a hospital in another state
6    in the manner provided in Section 4119 of the Welfare and
     Institutions Code.

7

8    [Emphasis added.]

9          It appears that under its express terms the California Penal Code section which

10   plaintiff asserts he comes under does not require that plaintiff receive any particular due process

11   before a transfer nor does it require that a court have a hearing before plaintiff can be transferred

12   so long as the transfer is made by "proper authority."  The on point authority, sparse as it is,

13   persuasively finds no federal liberty interest, procedural or substantive, in an insanity's acquittee's

14   "right" to least restrictive conditions on confinement, and hence no liberty interest in the transfer

15   of an insanity acquittee from one hospital to another.  Shapira v. Berger, 2008 WL 824216 (D.

16   Conn. 2008); Chiakulas v. Murphy, 1992 WL 186231 (N.D. Ill. 1992). *Cf* 18 U.S.C. §

17   4243(i)(D), a section referencing the transfer of insanity acquittee's into the custody of the

18   Attorney General: "Nothing in this paragraph shall be construed to – (i) create in any person a

19   liberty interest in being granted a hearing or notice on any matter....(iii) limit in any manner the

20   ability of the Attorney General to move, *transfer*, or otherwise manage any person committed to

21   the custody of the Attorney General." (Emphasis added).   The cases cited by plaintiff and

22   discussed below, either do not favor his position, or deal with inapposite situations.[12]

23         The holding of a Pennsylvania district court in Eubanks v. Clarke, 434 F. Supp. at

24

---

25         [12]  Of course, state statutes and regulations may create that liberty interest, but such is
     dependent on the wording of state law.  California law creates no such liberty interest forbidding
26   hospital transfers or requiring a hearing before hospital transfers.

12

1028, a 1977 case cited by plaintiff, was "that, at a minimum, where a state has varying available facilities for the mentally ill which differ significantly in the amount of restrictions on the rights and liberties of the patients, due process requires that the state place individuals in the least restrictive setting consistent with legitimate safety, care and treatment objectives." This case concerned those involuntarily committed as mentally incompetent or disabled and in need of care, pursuant to a Pennsylvania statute, and was not concerned with an individual such as plaintiff who had been found not guilty by reason of insanity in a criminal trial.[13] Application of Cochran, supra, 434 F. Supp. 1207, relied on by plaintiff is not apposite in that it concerned the due process required for those held pursuant to a Nebraska material witness statute[14] and even in that instance the court found that whether or not the petitioners therein were "entitled to the least restrictive alternative allowable" was not a settled question. Id. at 1215. Williams v. Robinson, 432 F.2d 637, 644 (U.S. App. D.C. 1970) (habeas corpus challenge by patient in public mental hospital complaining about confinement entitled to due process in the form of some reasonable opportunity to test evidence against him and to present his side); In Howard v. Overholser, 130 F.2d 429, a 1942 decision, a petitioner who committed a murder while insane was found not to be entitled to an order of transfer to Colorado from a court in the District of Columbia. Kesselbrenner v. Anonymous, 33 N.Y.2d 161, 165, 50 NYS 2d 889, 891, a case decided in 1973, involved an individual who was mentally ill, but who had never been involved in a criminal proceeding. The case cited Jackson v. Indiana, 406 U.S. 715, 738, 92 S. Ct. 1845 (1972), which

---

[13] Specifically, in discussing Eubanks, supra, the court in another case cited by plaintiff, Application of Cochran, supra, 434 F. Supp. at 1215, stated that the court in Eubanks "said that involuntarily committed mental patients *who have committed no crimes* are entitled to be institutionalized in the least restrictive available setting." [Emphasis added.]

[14] The court found that while parolees and material witnesses are not necessarily to be treated the same, that the six procedural safeguards of Morrissey v. Brewer, 408 U.S. 471, 484, 92 S.Ct. 2593 (1972), including notice and opportunity to be heard should be applied in the context of being held as a material witness who is "an innocent citizen whose right to the full enjoyment of liberty is threatened solely because of his potential usefulness as a witness for the government." Application of Cochran, supra, at 1213.

1  concerned the process due one charged with a criminal offense but being held because he did not

2  have the capacity to proceed to trial, and which held that:

3          [A] person charged by a [s]tate with a criminal offense who is

committed solely on account of his incapacity to proceed to trial

4  cannot be held more than the reasonable period of time necessary to

determine whether there is a substantial probability that he will

5  attain that capacity in the foreseeable future. If it is determined that

this is not the case, then the [s]tate must either institute the

6  customary civil commitment proceeding that would be required to

commit indefinitely any other citizen, or release the defendant.

7

8  In <u>Burchett v. Bower</u>, 355 F. Supp. 1278, 1279 -1281, a case decided in 1973, an Arizona prisoner

9  brought a § 1983 action, seeking, inter alia, a declaratory judgment that his right to mental

10  treatment in the state hospital was constitutionally protected.  The <u>Burchett</u> court held that the

11  defendants had to "comply with the requirements of due process and equal protection" before

12  plaintiff's right to be treated at the hospital could be terminated.  <u>Jones v. Robinson</u>, 440 F.2d

13  249, 251 (C.A.D.C. 1971) (hospital must provide minimal protective procedures in accordance

14  with due process before determining that a patient has committed a crime which would necessitate

15  his transfer to maximum security facilities); <u>In re Anderson</u>, 73 Cal. App.3d 38, 140 Cal. Rptr.

16  546, 553 (Cal. App. 1977) (finding outpatient at Atascadero, acquitted on insanity plea, entitled to

17  due process prior to recommitment in the form of written notice of charges and evidence

18  justifying recommitment, notice of the right to challenge allegations at a full revocation hearing

19  before a neutral body, disclosure of evidence against him, right to confront and cross-examine

20  witnesses, written statement by factfinder as to reasons for revocation of outpatient status).   <u>In</u>

21  <u>Baxstrom v. Herold</u>, 383 U.S. 107, 114-15, 86 S. Ct. 760, 764 (1966), relied on by plaintiff, the

22  High Court stated:

23

24          Where the State has provided for a judicial proceeding to determine

the dangerous propensities of all others civilly committed to an

institution of the Department of Correction, it may not deny this

25  right to a person in Baxstrom's position solely on the ground that he

was nearing the expiration of a prison term.[FN5] It may or may not

26  be that Baxstrom is presently mentally ill and such a danger to

14

1      others that the strict security of a Department of Correction hospital
       is warranted.  All others receive a judicial hearing on this issue.
2      Equal protection demands that Baxstrom receive the same.

3   As to all of the preceding cases cited by plaintiff in order to support his claim herein that he

4   cannot be transferred to a more restrictive setting absent a hearing and court order, each was

5   decided before 1979, when as the court in <u>Endsley v. Luna</u>, 2009 WL 3806266 *9, made clear to

6   plaintiff was prior to the time that the Supreme Court clarified the law in <u>Bell v. Wolfish</u>, <u>supra</u>,

7   441 U.S. 520, 99 S. Ct. 1861, and those cases simply do not reflect the current state of the

8   applicable law.  Moreover, this court notes that this is not the first time plaintiff has made the

9   spurious argument that <u>Bell v. Wolfish</u> is inapplicable to him.  As plaintiff has been specifically

10  previously informed:

11          Plaintiff takes issue with Defendant's citations to <u>Bell</u>,
            characterizing it as a "jail case" not applicable here. [] However, the
12          distinction Plaintiff attempts to draw between jails and mental
            hospitals misses the point.  With respect to persons in state custody,
13          the relevant distinction is between those who have been convicted
            of a criminal offense and those who have not. The Eighth
14          Amendment applies to convicted criminals and the Fourteenth
            Amendment applies to other detainees. <u>Jones</u>, 393 F.3d at 931. The
15          constitutional analysis is thus the same for pretrial detainees as it is
            for civilly committed persons: "due process requires that the nature
16          and duration of commitment bear some reasonable relation to the
            purpose for which the individual is committed." <u>Id</u>. Accordingly,
17          <u>Bell</u>, which involved pretrial detainees, 441 U.S. at 523, applies to
            Plaintiff's claims.

18

19  <u>Endsley v. Luna</u>, 2009 WL 3806266 *9, n. 11.

20          <u>Lynch v. Baxley</u>, 744 F.2d at 1463, also cited by plaintiff, was a 1984 out-of-circuit

21  case concerned with ensuring the least restrictive means of holding people pending commitment

22  proceedings, in forbidding the use of jails to detain those awaiting involuntary civil commitment

23  proceedings, again, a situation not like that of plaintiff.  In <u>People v. Michael W.</u>, 32 Cal. App.4th

24  1111, 38 Cal. Rptr.2d 556 (Cal. App. 1st 1995), the state appellate court applied the abuse of

25  discretion review standard to a trial court ruling on a petition for a grounds pass filed by a

26  defendant committed after being found not guilty of robbery by reason of insanity.

> Under section 1026, patients are not released "unless and until the court which committed the person shall ... determine that the person's sanity has been restored...." (§ 1026, subd. (b).) In addition to restoration of sanity proceedings, section 1026, subdivision (c), also authorizes a court to approve transfers of defendants to or between treatment facilities, upon receiving written recommendation from the hospital medical director and/or the community program director.

Michael W., 32 Cal. App.4th at 1118-19, 38 Cal. Rptr.2d at 561.

In Eckerhart v. Hensley, 475 F. Supp. 908, 914 (W.D. Mis. 1979), also cited by plaintiff, regarding a plaintiff class that included those found not guilty of criminal offenses by reason of mental disease or defect, it was stated:

> The Court therefore concludes that due process requires that the class of patients in this case, who have been involuntarily committed to a state mental hospital, be provided with such treatment as will give each of them a reasonable opportunity to be cured or to improve his mental condition.  Of course, the fourteenth amendment does not require the state to do what is clearly unreasonable or impossible.

Cited in Eckerhart is Rouse v. Cameron, 373 F.2d 451, 452-53 (C.A.D.C. (1966)) (asserting that treatment, not punishment, is the purpose of involuntary hospitalization); see also People v. Superior Court (Williams), 233 Cal. App.3d 477, 284 Cal. Rptr. 601, 605 (Cal. App.2nd 1991):

> The commitment of a defendant to a state hospital after a Penal Code section 1026 insanity determination is in lieu of criminal punishment and is for the purpose of treatment, not punishment.  (In re Moye (1978) 22 Cal.3d 457, 466, 149 Cal.Rptr. 491, 584 P.2d 1097.) "[W]hile it is obvious that confining a person acquitted under Penal Code section 1026 in a state hospital serves to protect society from that person's unreasonable acts and impulses, this sequestration likewise serves the patient by providing a setting for delivering treatment and services which may assist him or her towards mental health. The primary purpose of the state hospital system is to provide for the care, treatment and education of its mentally disordered patients." ( Department of Developmental Services v. Ladd (1990) 224 Cal.App.3d 128, 137, 273 Cal.Rptr. 485.)

Under Cal. Penal Code § 1026(c):

> If the defendant is committed or transferred to a state hospital pursuant to this section, the court may, upon receiving the written recommendation of the medical director of the state hospital and the community program director that the defendant be transferred to a public or private treatment facility approved by the community program director, order the defendant transferred to that facility. If the defendant is committed or transferred to a public or private treatment facility approved by the community program director, the court may, upon receiving the written recommendation of the community program director, order the defendant transferred to a state hospital or to another public or private treatment facility approved by the community program director. Where either the defendant or the prosecuting attorney chooses to contest either kind of order of transfer, a petition may be filed in the court requesting a hearing which shall be held if the court determines that sufficient grounds exist. At that hearing, the prosecuting attorney or the defendant may present evidence bearing on the order of transfer. The court shall use the same procedures and standards of proof as used in conducting probation revocation hearings pursuant to Section 1203.2.

Under the above provision, while it appears that the court may authorize a transfer of one such as plaintiff from one state hospital to another based on the recommendation of the state hospital medical director and the community program director, the language in this section does not on the face of it require a court order for a transfer, especially in light of the portion of Cal. Penal Code § 1026(b) which the court has emphasized above.  In contrast, the language of Cal. Penal Code § 1026(b) is emphatic that only the court can determine whether a patient committed can be found to have had his sanity restored and order his release.  What plaintiff does not show, however, is the basis for a Fourteenth Amendment due process claim in this court based on his transfer from one state hospital to another.  As plaintiff has been informed in another case, cited above, which he brought against a defendant at Patton, also named as a defendant herein, wherein summary judgment was entered for defendant (plaintiff having claimed that his constitutional rights had been violated by defendant's denials of his requests to own a laptop):

\\\\\

\\\\\

\\\\\

17

> [D]ue process requires that a civilly committed person's conditions of confinement bear some reasonable relation to the purpose for which the person is committed. Id. at 933[15] (citing Seling v. Young, 531 U.S. 250, 265, 121 S.Ct. 727, 148 L.Ed.2d 734 (2001)). "A reasonable relationship between the governmental interest and the challenged restriction does not require an 'exact fit,' nor does it require showing a 'least restrictive alternative.' " Valdez v. Rosenbaum, 302 F.3d 1039, 1046 (9th Cir.2002) (citation omitted). "Otherwise, every administrative judgment would be subject to the possibility that some court somewhere would conclude that it had a less restrictive way of solving the problem at hand." Id. (internal quotation marks omitted).

Endsley v. Luna, supra, 2009 WL 3806266 *8.

This court cannot find sufficient authority for the proposition that a committed individual such as plaintiff is entitled, under the federal constitution, to notice or other due process prior to a transfer from one state hospital to another even if it is a more restrictive institution. Indeed, the authority that exists is to the contrary. Therefore, it is the determination of the undersigned that the motion to dismiss the first claim for relief regarding an alleged violation of plaintiff's substantive and procedural due process rights by his transfer from Patton to Atascadero, brought by defendants Mayberg, DeMorales, Radavsky, Luna and Malancharuvil should be granted, and that claim should be dismissed without leave to amend.

\\\\\
\\\\\
\\\\\
\\\\\
\\\\\
\\\\\
\\\\\
\\\\\

---

[15] Jones v. Blanas, 393 F.3d 918 [933] (9th Cir. 2004).

Motion for Leave to Amend

Plaintiff moves for leave to amend, citing Fed. R. Civ. P. 15(a), as well as Fed. R. Civ. P. 19(a).[16]  Plaintiff failed to amend timely pursuant to Rule 15(a)(1),[17] so he may only seek to amend under Rule 15(a)(2), with the opposing party's consent or the court's leave.  Plaintiff's motion is opposed by defendants.  The court must consider whether leave to amend is warranted and is under an obligation to "freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2).

Plaintiff's claim that he was transferred without the requisite due process from one state hospital (Patton) to a more restrictive one (Atascadero) remains a focal point of his proposed amended complaint.  Amended Complaint (AC), pp. 7, 10-12, 28.  However, this court has herein determined, in adjudicating the motion to dismiss by the present defendants, that plaintiff does not therein state a federal claim and is recommending dismissal of that claim without leave to amend. Therefore, from the outset, in screening the proposed amended complaint, that claim must be stricken.

_____

[16] Under Rule 19(a)(1), persons "whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:" (A) without that party, "the court cannot accord complete relief among existing parties;" or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:" either (1) "impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to ... inconsistent obligations because of the interest."  Under Rule 19(a)(2), the court must order joinder of a party, who has not been joined as required.  "A person who refuses to join as a plaintiff may be made either a defendant or, in a proper case, an involuntary plaintiff." Plaintiff herein does not make a case for how the newly named defendants fit under the rubric of Fed. R. Civ. P. 19(a).

[17] Under Rule 15(a)(1), a pleading may be amended "once as a matter of course" if amended (A) within 21 days of having been served or (B) within "21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e) or (f), whichever is earlier."  Plaintiff's proposed amended complaint was not filed, even by application of the mailbox rule, until April 25, 2010, more than 21 days after defendants filed their motion to dismiss, under Fed. R. Civ. P. 12(b)(6), on March 11, 2010.  Pursuant to Houston v. Lack, 487 U.S. 266, 275-76, 108 S. Ct. 2379, 2385 (1988) (pro se prisoner filing is dated from the date prisoner delivers it to prison authorities).  Douglas v. Noelle, 567 F.3d 1103, 1109 (9th Cir. 2009), holding that "the Houston mailbox rule applies to § 1983 complaints filed by *pro se* prisoners").  The undersigned liberally permits application of the mailbox rule to plaintiff, even though he is, as he vehemently maintains, civilly committed and not a prisoner.

1    Named as defendants in the original complaint are Stephen Mayberg, Joseph

2  Malancharuvil, Octavia Luna, Jon DeMorales, Cynthia Radavsky.  Newly named parties in the

3  proposed amended complaint include the following as additional defendants in their individual

4  capacities only: Brenda Moore, Doug Harrington, Colleen Garren, Rocky Spurgeon, Glenn Crill,

5  Rebecca Sanchez, Rand Jennings. AC, pp. 1, 3-5.  He also seeks to proceed, in the proposed

6  amended complaint, against the State of California, the Governor of California, the Director of the

7  California Department of Mental Health,[18] Sheri Dooley, and Pedro Guimaraes in their official

8  capacities.  Id.  Plaintiff dates his claims from, at one point, May 29, 2009, but apparently means

9  to date them from May 29, 2008, the date he otherwise fairly consistently claims as his date of

10  transfer to Atascadero, to the present.  Id. at 2, 7.  Except for those defendants who are state

11  officials and the state itself, all of the new defendants are employed at Atascadero.  He reiterates

12  his claims that his transfer was violative of his rights, was retaliatory and resulted in an

13  unconstitutional deprivation of his property.  The court has already recommended dismissal of any

14  claim that he was deprived of due process in the transfer.  Plaintiff claims that his transfer has

15  subjected him to punitive conditions and that the state's "'Non-LPS' commitment scheme is

16  unconstitutional" because as a civilly committed person he is subjected to unnecessarily restrictive

17  confinement.  Id. at 7.

18    Plaintiff denies making a threat to defendant Crill on February 22, 2010, that

19  resulted in his being completely restricted to his unit until about March 5, 2010.  AC, p. 8.  Due to

20  the alleged threat plaintiff was transferred by defendant Spurgeon to significantly more restrictive

21  unit and although plaintiff has complained to defendant Sanchez that the policy is punitive, and

22  filed a grievance, defendants Sanchez, Jennings, DeMorales and Guimaraes have maintained the

23  policy and continued punishing plaintiff.  Id.  He is therefore restricted from or wholly denied

24

---

25    [18] Plaintiff is already proceeding against defendant Mayberg, whom he has identified as
the Director of the California Department of Mental Health, in his individual and official
26  capacity.  See Order, filed on October 26, 2009, and footnote 1.

20

1  access, inter alia, to vocational therapy, law library, graphic arts, gym, main yard, canteen.  Id.

2  　　　　　Plaintiff describes an incident on March 17, 2000, when defendant Sanchez told

3  plaintiff he could not get an escort to make photocopies that day when staff was available to escort

4  him.  AC, pp. 8-9.  Plaintiff's documents involved "injunctions related to this suit."  Id. at 8.

5  Plaintiff nevertheless walked off the unit to obtain the copies himself, but was intercepted and

6  escorted back.  Id. at 9.  As plaintiff argued that he would be able to get his copies if he were not

7  being illegally punished, defendant Guimaraes intervened and when plaintiff demanded the

8  spelling of his name, accused plaintiff of threatening him and ordered plaintiff to be placed in

9  seclusion, where plaintiff was deprived of his possessions, including writing materials.  Id.

10 Defendant Guimaraes told plaintiff that as an insanity acquittee he cannot refuse medication under

11 California law and that he was ordering plaintiff's medication to be changed.  Id.  Plaintiff claims

12 that he is still afforded no law library access, although he appears to concede that he does receive

13 one hour a week and that he is only able to get copies when staff can escort him.  Id.

14 　　　　　The court has already determined that plaintiff has failed to frame a claim against

15 defendants Mayberg, Radavsky and Malancharuvil, Luna and DeMorales for a violation of his

16 substantive and procedural due process rights in transferring plaintiff from Patton to Atascadero,

17 so the court will not detail this claim within the amended complaint.   AC, pp. 10-12.  In addition,

18 the court finds that plaintiff's claim of kidnapping is wholly frivolous, in both the original and

19 amended complaints.  In addition, plaintiff claims that in transferring plaintiff to a substantially

20 more restrictive unit without a hearing, defendant Spurgeon violated his due process rights.

21 　　　　　Plaintiff alleges as the second claim in his amended complaint that most of his

22 property was confiscated as contraband upon his arrival at Atascadero.  AC, p. 13.  When plaintiff

23 wrote a "letter of demand" to defendants Mayberg and DeMorales in June, 2008, defendant

24 Radavsky on behalf of Mayberg responded that plaintiff's property could be held indefinitely at

25 the discretion of the Department of Mental Health.  Id. at 13-14.  Plaintiff contends that he is

26 entitled to due process before he can be deprived of his property and that California law requires

1   good cause before he can be deprived of his property, citing CAL. CODE REGS. tit.ix, § 884,[19] and that

2   heightened scrutiny is applied.  Id at 14.  He contends that defendants Mayberg and DeMorales in

3   depriving him of his property committed the tort of dependent adult abuse under Cal. Penal Code

4   section 368 and crimes in violation of 18 U.S.C. section 242 and 241.  Id. at 15.

5          Plaintiff, as a third claim, alleges that defendants Mayberg, Radavsky, Luna,

6   Malancharuvil and DeMorales arranged his transfer in retaliation for his having filed lawsuits and

7   for his having refused treatment.  AC, p. 16.  Plaintiff alleges that Mayberg, Luna and

8   Malancharuvil's retaliatory actions also resulted in dependent adult abuse.  Id. at 16-17.

9          In his fourth claim, plaintiff asks that the court transfer him to a less restrictive

10  setting and demands "'true' civil status pursuant to federal authorities" and the ADA (Americans

11  with Disabilities Act).  AC, pp. 18-19.  In his fifth claim, plaintiff (repetitively) alleges that

12  Atascadero's conditions of confinement are punitive, more restrictive than those faced by

13  prisoners and reserved for men only.  AC, p. 21.  Plaintiff describes an encounter with defendants

14  Moore and Harrington wherein he was escorted from the canteen line and had his custody level

15  reduced.  Id. at 21-22.  He complains about the bedding, the lack of electrical outlets, the limited

16  personal property, the prison-like facilities.  Id. at 22.  He alleges that defendant Garren acting

17  under authority of defendants Spurgeon, DeMorales and Mayberg has seized his legal papers.  Id.

18  Plaintiff claims these defendants have been sued before for conspiring to deprive those committed

19  as SVPs of the right to access the courts.  Id.  Plaintiff accuses defendants Sanchez, Jennings,

20  DeMorales and Guimaraes of establishing a policy of depriving him of his hospital access system

21  level and restricting his movement.  Id. at 23.  He claims defendants Mayberg and DeMorales

22  ignore all judicial findings that conditions at Atascadero are unconstitutional.  Id.  As his sixth

23

24          [19] CAL. CODE REGS. tit.ix, § 884(b) sets forth the rights of non-LPS patients, "subject to
    denial for good cause" including, inter alia, "(1) [A] right to keep and use personal possessions as
25  space permits, except items and materials that are listed as contraband by the facility" and "(2)
    [A] right to have access to individual secured storage space for personal possessions in
26  accordance with the formal policies and procedures of the facility."

1   claim, plaintiff alleges that the fact that he as an insanity acquittee under California law is within

2   the only classification of civilly committed individuals who cannot refuse medication in a non-

3   emergency situation which he claims is a deprviation of his equal protection and due process

4   rights.  Id. at 25.

5                    In opposition, defendants seek judicial notice of numerous prior complaints

6   plaintiff has filed, which judicial notice the court grants.[20]  Defendants point out that plaintiff has

7   previously brought cases in the Central District naming many of the same individuals as

8   defendants and predicated on many of the same bases.  In Case No. 2:08-cv-08307, Endsley v.

9   Malancharuvil, et al., plaintiff sued Luna, Malancharuvil, Mayberg and DeMorales for a number

10  of civil rights violations, including in his fourth claim, nearly identical to his first and fourth

11  claims in the instant proposed amended complaint, that his transfer from Patton to Atascadero was

12  a violation of plaintiff's due process rights.  See Opposition (Opp.), Exhibit (Ex) A to request for

13  judicial notice, docket 26-3, pp. 17-18.  Plaintiff also therein alleged the "tort of kidnapping."  Id.

14  at 19.  The court also notes that in claim five of that complaint plaintiff also alleges a deprivation

15  of his property by defendants Mayberg and DeMorales at Atascadero that violates his due process

16  rights and the same state regulation plaintiff points to within the instant proposed amended

17  complaint. Id. at 18-19.  In Case No. 2:08-cv-07616-UA-SS, Endsley v. State of California, et al.,

18  plaintiff alleged a violation of his substantive due process rights with respect to his conditions of

19  confinement, complaining specifically of the lack of electrical outlets in patient cells at

20  Atascadero (first claim).  Opp., Ex B to request for judicial notice, docket 26-4, p. 10.   In his

21  second claim, plaintiff alleged a violation of his right to equal protection by defendants Mayberg,

22  DeMorales and Schwarzenegger on the basis that at Atascadero he is treated more punitively than

23  others who are civilly committed or even criminally convicted.  Id. at 12-13.  His third claim in

24

25      [20]  A court may take judicial notice of court records.  See Barron v. Reich, 13 F.3d 1370,
    1377 (9th Cir. 1994); MGIC Indem. Co. v. Weisman, 803 F.2d 500, 505 (9th Cir. 1986); United
26  States v. Wilson, 631 F.2d 118, 119 (9th Cir. 1980).

1   that complaint is that he is deprived of procedural due process by the seizure of the majority of his

2   property as contraband at Atascadero, which he alleges against DeMorales. Id. at 14. This claim

3   too mirrors his proposed second claim within the instant proposed amended complaint.

4          In Case No. 2:09-cv-01836-UA-SS, Endsley v. DeMorales, again filed in the

5   Central District, plaintiff names DeMorales, Mayberg and Schwarzenegger as defendants, in an

6   action purportedly brought on behalf of himself and other state mental patients at Atascadero.

7   Opp., Ex C to request for judicial notice, docket 26-5, pp. 9-16. In the first claim, plaintiff alleges

8   a violation of the substantive due process rights of himself and other mental patients related to the

9   claimed restrictive conditions at Atascadero. Id. at 12. In the second claim, it is alleged that

10   plaintiffs at Atascadero are deprived of their equal protection rights by being deprived of access to

11   property and amenities such as, inter alia, two electrical outlets by each bed, secure storage space

12   by their beds, televisions, video game consoles, CD/DVD players, personal electric razors,

13   personal computers. Id. at 13. In the third claim, it is alleged that plaintiffs procedural due

14   process rights have been violated, as well as Cal. Code Regs. tit.ix, § 884(b)(1) (see footnote 17,

15   above), by the deprivation of their property at Atascadero. Id. at 14. As stated within the

16   proposed amended complaint, plaintiff claims on behalf of himself and other plaintiffs that

17   heightened scrutiny is applicable before the deprivation of property can take place. Id. In the

18   fifth claim, plaintiff, purportedly on behalf of himself and other mental patients also allege

19   violations of the ADA by their treatment at Atascadero. Id. at 15. This claim essentially repeats

20   the part of the fourth claim in the instant proposed amended complaint that is not encompassed

21   within the discredited claim of a violation of his due process rights by his transfer to Atascadero.

22          The undersigned agrees with defendants' contention that, while his claim for relief

23   in Case No. 2:08-cv-07616, is shorter than that in the instant proposed amended complaint, his

24   claim for declaratory and injunctive relief is virtually identical where he is seeking an immediate

25   transfer back to Patton. Opp., pp. 2-3. Defendants note that in all three of the cases noted above,

26   the court denied plaintiff's in forma pauperis status requests. Id. at 3 & n. 3. In Case No. 2:08-cv-

08307, the court denied plaintiff in forma pauperis on the basis that plaintiff's claims were

"legally and/or patently frivolous," noting that plaintiff had previously sued, inter alia, defendants

Luna, Mayberg and Schwarzenegger, in a prior case, Case No. CV-06-6916, Endsley v. Luna, and

that the allegations of CV-08-8307 were "repetitive of those previously asserted in CV-06-6961"

and that in two preceding cases both CV-06-6961 and CV-06-4100, Endsley v. Luna, plaintiff had

asserted due process and equal protection violations alleging deprivation of his personal

possessions.   Opp., Ex. A, docket # 26-3, pp. 5-8.  In fact, in CV-08-8307 and in CV-08-07616, it

was noted that plaintiff had filed six civil actions in the Central District, which in addition to the

those noted herein, also included Case No. CV-08-0952, Endsley v. San Bernardino Sup. Ct., and

Case No. CV-08-4705, Endsley v. San Bernardino Sup. Ct.  Id. at 7 & n. 1; Opp. Ex. B, docket #

26-4, p. 5 & n. 1.  Actually, in Case No. 09-1836, eight prior filings were noted, including Case

No. CV-08-921, Endsley v. Luna.  Opp., Ex. C, docket # 26-5, p. 6 & n. 1.  In forma pauperis

status was denied to plaintiff in  Case No. 09-1836, again for legally/factually patently frivolous

claims and because he, a pro se litigant, was attempting to represent other plaintiffs, and also

because he was "attempting to relitigate virtually identical claims...currently being litigated in two

pending cases brought by plaintiff in the Central District of California."  Id.  at 4-6.

Defendants note that in rejecting plaintiff's IFP status in Case No. 09-1836,

(alleging due process and equal protection violations at Atascadero), the court observed that

plaintiff had had a previous opportunity in both Case No. 06-4100 to litigate his allegations

regarding denial of electronic devices at Patton (against some of the same defendants sued in both

09-1836 and the instant action), as well as in a state action that plaintiff admitted he had filed.

Opp., p. 4.  In 06-6961, plaintiff sued defendants Mayberg, Schwarzenegger and several Patton

employees about a deprivation of his possessions and raised a claim under the ADA.  Id.  The

Central District Court noted that "although plaintiff has included alternative theories in the present

action, plaintiff's new allegations do not alter the fact that the current litigation repeats claims

from his prior cases."  Id., quoting Ex. C, docket #, 26-5, p. 13.  It is not exactly clear why

25

1    defendants do not make the argument that some or all of the claims of the original complaint may

2    be res judicata[21] as well, instead indicating that it will be subject to a motion for summary

3    judgment.  Opp., p. 7.  In opposing the proposed amended complaint, defendants ask that that

4    complaint be rejected and reiterate that the first claim of the original complaint be dismissed

5    pursuant to their motion to dismiss adjudicated above.  Id.

6              Defendants argue that the Eleventh Amendment bars plaintiff's claims against,

7    inter alia, newly named defendant the State of California, Arnold Schwarzenegger, Sheri Dooley

8    and the Director of Mental Health.  Opp., p. 4.  However, while the Eleventh Amendment does

9    bar serves as a jurisdictional bar to suits brought by private parties against a state or state agency

10   unless the state or the agency consents to such suit, see Quern v. Jordan, 440 U.S. 332 (1979);

11   Alabama v. Pugh, 438 U.S. 781 (1978)( per curiam); Jackson v. Hayakawa, 682 F.2d 1344,

12   1349-50 (9th Cir. 1982), plaintiff apparently is intending to sue under both § 1983 and the ADA.

13   Plaintiff may bring a claim pursuant to Title II of the ADA against state entities for injunctive

14   relief and damages. See Phiffer v. Columbia River Correctional Institute, 384 F.3d 791 (9th Cir.

15   2004); Lovell v. Chandler, 303 F.3d 1039 (9th Cir. 2002).  While he may seek money damages

16   against state entities under the ADA, however, he cannot seek damages pursuant to the ADA

17   against the defendants in their individual capacities.  Eason v. Clark County School Dist., 303

18   F.3d 1137, 1144 (9th Cir. 2002), citing Garcia v. S.U.N.Y. Health, 280 F.3d 98, 107 (2d Cir.

19   2001).  Moreover, Title II of the ADA prohibits a public entity from discriminating against a

20   qualified individual with a disability on the basis of a disability.  42 U.S.C. § 12132 (1994);

21   Weinrich v. L.A. County Metro Transp. Auth., 114 F.3d 976, 978 (9th Cir. 1997).  To state a claim

22   under Title II, the plaintiff must allege four elements: 1) the plaintiff is an individual with a

23

24         [21] Under the doctrine of res judicata, a final judgment on the merits precludes the parties
     or their privies from relitigating issues that were or could have been raised in that action.  Dodd
25   v. Hood River County, 59 F.3d 852, 863 (9th Cir. 1995).  The doctrine of res judicata
     encompasses two concepts: issue preclusion and claim preclusion.  Migra v. Warren City Sch.
26   Dist. Bd. of Educ., 465 U.S. 75, 77 n.1 (1984); Dodd, 59 F.3d at 863.

1   disability; 2) the plaintiff is otherwise qualified to participate in or receive the benefit of some

2   public entity's services, programs, or activities; 3) the plaintiff was either excluded from

3   participation in or denied the benefits by the public entity; and 4) such exclusion, denial of

4   benefits or discrimination was by reason of the plaintiff's disability.  Weinrich, 114 F.3d at 978.

5   Defendants are correct that plaintiff has not made the requisite allegations to show that he is a

6   qualifying individual under the ADA; in fact notwithstanding his commitment on grounds of

7   insanity he essentially, as defendant notes, denies any significant impairment.  Opp., p. 6.  In any

8   event, plaintiff's having previously raised similar claims under the ADA should foreclose an

9   additional opportunity to do so in this amended complaint.

10          It is also true that even under § 1983, just as it is not necessary to allege Monell[22]

11  policy grounds when suing a state or municipal official in his or her official capacity for injunctive

12  relief related to a procedure of a state entity, Chaloux v. Killeen, 886 F.2d 247 (9th Cir. 1989), it

13  follows that it is not necessary to allege the personal involvement of a state official when plaintiffs

14  are attacking a state procedure on federal grounds that relates in some way to the job duties of the

15  named defendant.  All that is required is that the complaint name an official who could

16  appropriately respond to a court order on injunctive relief should one ever be issued.  Harrington

17  v. Grayson, 764 F. Supp. 464, 475-477 (E.D. Mich. 1991); Malik v. Tanner, 697 F. Supp. 1294,

18  1304 (S.D.N.Y. 1988).  ("Furthermore, a claim for injunctive relief, as opposed to monetary relief,

19  may be made on a theory of respondeat superior in a § 1983 action."); Fox Valley Reproductive

20  Health Care v. Arft, 454 F. Supp. 784, 786 (E.D. Wis. 1978).  See also, Hoptowit v. Spellman,

21  753 F.2d 779 (9th Cir. 1985), permitting an injunctive relief suit to continue against an official's

22  successors despite objection that the successors had not personally engaged in the same practice

23  that had led to the suit.  However, because a suit against an official in his or her official capacity is

24  a suit against the state, a practice, policy or procedure of the state must be at issue in a claim for

25

26          [22]  Monell v. Department of Social Servs., 436 U.S. 658, 98 S. Ct. 2018 (1978).

1  official capacity injunctive relief.   Haber v. Melo, 502 U.S. 21, 25, 112 S. Ct. 358, 361-62 (1991).

2       Defendants' argument that plaintiff is overreaching in the relief he seeks has some

3  merit.  In seeking to enjoin the Department of Mental Health from administrative transfers of

4  patients, to promulgate particular policies with regard to transferring patients, to comply with

5  indigency standards with regard to supplies and services, to have the governor, the state and

6  Department of Mental Health enjoined from committing patients to Atascadero until conditions of

7  confinement are altered to meet plaintiff's conception of what is required for those civilly

8  committed; to prohibit Atascadero staff and non-patients from canteen purchases until patients are

9  served equally.   Opp., p. 5; AC, pp. 27-28.  "[C]ourts have routinely adhered to the general rule

10  prohibiting pro se plaintiffs from pursuing claims on behalf of others in a representative capacity."

11  Simon v. Hartford Life, Inc., 546 F.3d 661, 664 (9th Cir. 2008).  Plaintiff's privilege to appear in

12  propria persona is a "privilege ... personal to him.  He has no authority to appear as an attorney for

13  others than himself."  McShane v. U. S., 366 F.2d 286, 288 (9th Cir.1966), citing Russell v.United

14  States, 308 F.2d 78, 79 (9th Cir. 1962); Collins v. O'Brien, 93 U.S.App.D.C. 152, 208 F.2d 44, 45

15  (1953), cert. denied, 347 U.S. 944, 74 S. Ct. 640 (1954).   Nor has plaintiff made a motion for

16  class certification pursuant to Fed. R. Civ. P. 23.

17       Defendants also contend that in asking to have his status "commuted" to a "'true

18  civil commitment" plaintiff is essentially challenging the fact and duration of his commitment.

19  Opp., p. 5.  Defendants point out that plaintiff's reference to Cal. Welf. & Inst. Code § 5358 (as

20  noted by the court at footnote 2 above) is inapposite, inasmuch as plaintiff had conceded that he is

21  not committed under the LPS Act and the section referenced concerns placement by a conservator

22  or a conservatee.  Id. & n. 5.  In his new sixth claim, defendants point out that his claim

23  concerning involuntary medication is essentially a challenge to the fact that his classification as an

24  insanity acquittee allows him to be involuntarily medicated in a non-emergency context.  Id.

25  Further, as relief, he seeks the end of his commitment under Cal. Penal Code § 1026 and

26  subsequent re-commitment under general civil commitment statutes.   AC, pp. 26-27.  Defendants

1   are correct that challenges to the fact or duration of one's confinement must come by way of a

2   habeas corpus petition.  Opp., p. 5.  "Challenges to the validity of any confinement or to

3   particulars affecting its duration are the province of habeas corpus, Preiser v. Rodriguez, 411 U.S.

4   475, 500, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973)...."  Muhammad v. Close, 540 U.S.749, 750, 124

5   S.Ct. 1303, 1304(2004) (per curiam).

6            In addition, defendants make the point that newly named defendants Moore,

7   Harrington, Dooley, Garren, Jennings and Crill appear only in the new fifth claim and plaintiff

8   therein does not sufficiently allege a claim of personal involvement in a constitutional deprivation

9   suffered by plaintiff.  Opp., p. 6, citing Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989)

10  ("Liability under § 1983 arises only upon a showing of personal participation by the defendant").

11  Defendant Guimaraes appears in the new fifth and sixth claims, and should not be added as a

12  defendant, according to defendants.  Opp., p. 6.  The court agrees that as to defendant Sanchez,

13  named in the fifth claim, plaintiff has not sufficiently alleged her involvement in a constitutional

14  deprivation visited upon plaintiff.  Id.  It is not enough for plaintiff, who has sued her in an

15  individual capacity (AC, p. 4), simply to say conclusorily that she is responsible for Unit 16

16  policies without specifying her involvement.

17           In asserting multiple unrelated claims against different defendants (or against some

18  of whom he has not clearly identified as defendants), plaintiff presents the kind of "mishmash of a

19  complaint" that has been roundly repudiated.  George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007)

20  ("[u]nrelated claims against different defendants belong in different suits").  Fed. R. Civ. P. 18(a)

21  provides: "A party asserting a claim, counter-claim, crossclaim, or third-party claim may join, as

22  independent or alternative claims, as many claims as it has against an opposing party."  "Thus

23  multiple claims against a single party are fine, but Claim A against Defendant 1 should not be

24  joined with unrelated Claim B against Defendant 2."  George v. Smith, 507 F.3d 605, 607 (7th

25  Cir. 2007).  "Unrelated claims against different defendants belong in different suits[.]"  Id.

26           It is true that Fed. R. Civ. P. 20(a) provides that "[p]ersons ...may be joined in one

29

1   action as defendants if: (A) any right is asserted against them jointly, severally, or in the

2   alternative with respect to or arising out of the same transaction, occurrence, or series of

3   transactions or occurrences; and (B) any question of law or fact common to all defendants will

4   arise in the action."  However, "[a] buckshot complaint that would be rejected if filed by a free

5   person – say, a suit complaining that A defrauded the plaintiff, B defamed him, C punched him, D

6   failed to pay a debt, and E infringed his copyright, all in different transactions – should be rejected

7   if filed by a prisoner."  Id. at 607.

8          In addition, plaintiff has failed, pursuant to Fed. R. Civ. P. 8(a)(2), to provide "a

9   short and plain statement of the claim showing that the pleader is entitled to relief...."  Rule 8

10  requires "sufficient allegations to put defendants fairly on notice of the claims against them."

11  McKeever v. Block, 932 F.2d 795, 798 (9th Cir. 1991)).  Accord Richmond v. Nationwide Cassel

12  L.P., 52 F.3d 640, 645 (7th Cir. 1995) (amended complaint with vague and scanty allegations fails

13  to satisfy the notice requirement of  Rule 8.)  "The propriety of dismissal for failure to comply

14  with Rule 8 does not depend on whether the complaint is wholly without merit," McHenry v.

15  Renne, 84 F.3d 1172, 1179 (9th Cir. 1996).  The proposed amended complaint in this action

16  illustrates the "unfair burdens" imposed by complaints, "prolix in evidentiary detail, yet without

17  simplicity, conciseness and clarity" which "fail to perform the essential functions of a complaint."

18  McHenry , 84 F.3d at 1179-80.

19         Plaintiff's motion for leave to amend will be denied and this court will recommend

20  this action proceed on the original complaint, as modified by the dismissal of the claim of due

21  process violation regarding his transfer to Atascadero.  "Liberality in granting a plaintiff leave to

22  amend 'is subject to the qualification that the amendment not cause undue prejudice to the

23  defendant, is not sought in bad faith, and is not futile.'"  Thornton v. McClatchy Newspapers, Inc.,

24  261 F.3d 789, 799 (9th Cir. 2001), quoting Bowles v. Reade, 198 F.3d 752, 757 (9th Cir.1999);

25  Lopez v. Smith, 203 F.3d 1122, 1124 (9th Cir. 2000) ("[A] district court retains its discretion over

26  the terms of a dismissal for failure to state a claim, including whether to make the dismissal with

1   or without leave to amend.").

2          Accordingly, IT IS ORDERED:

3          1.  Plaintiff's motion for partial summary judgment, filed on September 16, 2010

4   (docket # 27), is vacated without prejudice as premature.

5          2.  Plaintiff's motion for leave to amend his complaint, filed on April 28, 2010

6   (docket # 21), is denied; and

7          IT IS HEREBY RECOMMENDED that:

8          1.  Defendants' motion to dismiss the first claim for relief, filed on March 11, 2010

9   (docket # 12), from the original complaint be granted; and

10         2.  Defendants be directed to file an answer to the modified original complaint,

11  absent the claim regarding a violation of due process in plaintiff's transfer from Patton to

12  Atascadero, within twenty-eight days of adoption of these findings and recommendations, should

13  that occur.

14         These findings and recommendations are submitted to the United States District

15  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen

16  days after being served with these findings and recommendations, any party may file written

17  objections with the court and serve a copy on all parties.  Such a document should be captioned

18  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

19  shall be served and filed within fourteen days after service of the objections.  The parties are

20  advised that failure to file objections within the specified time may waive the right to appeal the

21  District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

22  DATED: 11/19/2010

23                                      /s/ Gregory G. Hollows

24                                      _____

25                                      UNITED STATES MAGISTRATE JUDGE

GGH:009
26  ends2311.mtd+

31